## THE HURON.

(District Court, E. D. Pennsylvania. April 15, 1921.)

No. 98.

1. **Maritime liens ⬤⟹28—Claimant must exercise diligence to ascertain authority to bind vessel.**

    A claimant, who furnishes supplies for repairs to a vessel, must exercise diligence to ascertain whether the person who ordered the supplies had authority to bind the vessel.

2. **Maritime liens ⬤⟹65—Evidence held not to show diligence which would have disclosed charterer's lack of authority.**

    On libel to enforce a maritime lien for a boom furnished to a hoisting barge, evidence that libelant knew before he furnished the boom that the one who ordered it was not the owner of the barge *held* to show that libelant did not exercise due diligence in ascertaining the authority to charge the vessel with liability for the boom, which was in fact ordered by a charterer of the barge to comply with the charter requirement that the barge be returned in the same condition as when it was chartered.

In Admiralty. Libel by the Delanco Shipbuilding Company against the barge Huron to enforce a maritime lien. On final hearing. Libel dismissed.

Willard M. Harris, of Philadelphia, Pa., for libelant.

Lewis, Adler & Laws, of Philadelphia, Pa., for respondent.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMPSON, District Judge. The libelant claims a maritime lien under the Act of June 23, 1910 (Comp. St. §§ 7783–7787), against the hoisting barge Huron for furnishing a boom at an agreed price of $425. The barge at the time was under charter to the Downey Contracting Company. The charter party was in writing, and provided that upon its termination the charterer should return her in as good condition as when delivered. When the barge was delivered, it was equipped with a boom from 63 to 65 feet long that had broken off while in the service of the charterer, and had been replaced by a short boom about 45 or 50 feet long. The boom supplied was to replace the original boom, so as to return the barge in the same condition as when delivered, according to the terms of the charter party.

The facts are as follows:

On November 26, 1919, Mr. G. B. Lockhart, on behalf of the Thompson Lockhart Company, the owner of the barge, the respondent, wrote the libelant, asking for a quotation on the boom, fitted and installed complete on the Huron and asking the length of time required to perform the work. Prior to sending this letter, Mr. Lockhart had called up Mr. Harris, the vice president of the libelant, inquiring whether the libelant would do any work for him. Mr. Harris told him that undoubtedly it would, if he would communicate with the company and let it know his wants. Mr. Prouse, the superintendent, after the receipt of the letter, called Mr. Lockhart on the telephone and informed him that the boom would cost $425, upon which Mr. Lockhart told him that he would hear from him in a few days.

The Downey Contracting Company thereupon, on December 29, 1919, wrote the libelant as follows:

"We hereby accept your offer made to the Thompson Lockhart Company to install and furnish complete one Oregon pine boom cut to suit from a spar 85 feet long, 21 inches diameter at butt, floated to the dredge Huron and fitted at present location, for the sum of $425. Please send us formal bid, so that we can submit it to the insurance company."

The libelant thereupon wrote the Downey Contracting Company as follows:

"We agree to furnish and install one Oregon pine boom, 14"x14," 63 feet long, fitted and installed, using old fittings, on hoister Huron, belonging to the Thompson Lockhart Company for the sum of four hundred and twenty-five ($425) dollars. Thanking you for the order, we will proceed with this at once."

On January 30 the libelant sent a bill for installing the boom to the Downey Contracting Company, and received a letter in reference thereto on February 6, 1920, stating that the work had not been completed, and asking for an investigation and completion at once. To that letter the libelant replied on February 11, stating that the job had been completed. There was subsequent correspondence between the libelant and the Downey Contracting Company in relation to the bill, and the libelant was informed that the matter had been turned over to the Contracting Company's insurance broker, as the bill was to be paid by the insurance company.

While the inquiry as to the cost of the boom was made by Mr. Lockhart, of the respondent company, the offer to furnish it for $425, made to the respondent, was accepted by the Downey Contracting Company, and a formal bid and acceptance of the order was made by the libelant to that company. The contract which was in writing was therefore made with the charterer and not the owner, unless the charterer was authorized to act for the owner. There was no evidence that the charterer was acting as the authorized agent of the owner, and the question is whether the circumstances were such as to create a maritime lien against the barge under the act of Congress, and whether the case comes within the limitations upon the ordering of supplies contained in section 3 of the act, upon the ground that the libelant knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of the charter party the charterer was without authority to bind the vessel.

[1] That a boom is a necessary part of a hoisting barge is not open to discussion. But the barge was in its home port, was equipped with a shorter boom, and the new boom was only necessary to enable the charterer to comply with the terms of the charter party. If a claimant for necessaries knows that a vessel is under charter, he can by the exercise of reasonable diligence ascertain the terms of the charter party, and if, as in this case, a party, not the owner, attempts to obtain necessaries, reasonable diligence would require the furnisher to inquire of the one ordering concerning his relations to the owner of the vessel.

[2] The libelant knew that the respondent, and not the Downey Contracting Company, was the owner. Under these circumstances, no undue burden of diligence is placed upon the furnisher in requiring it to make inquiry. An inquiry of the Downey Contracting Company would have informed the libelant that it was a charterer of the vessel, and that, under its charter, it was liable for the replacing of the broken boom. Instead of making inquiry, Mr. Prouse seems to have relied upon a surmise that the Downey Company was in some other way connected with the libelant, and therefore was authorized to act for it.

Clearly the libelant did not exercise the due diligence, which would have informed him that the person ordering the boom was without authority to bind the vessel. The conduct of the libelant throughout indicates that it expected to hold the Downey Contracting Company responsible, and that it was only after it failed to collect from that company that it asserted its right to a maritime lien.

It is concluded that the libel should be dismissed, at libelant's costs; and it is so ordered.